**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| ET AGGREGATOR, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No.: N23C-02-096-EMD CCLD |
| | ) |
| PFJE ASSETCO HOLDINGS LLC, and | ) |
| PILOT WATER SOLUTIONS LLC (f/k/a | ) |
| PDPS, LLC), | ) |
| | ) |
| Defendants. | ) |

Submitted: August 23, 2023
Decided: December 8, 2023

*Upon Partial Motion to Dismiss of Defendants PFJE AssetCo Holdings LLC and Pilot Solutions LLC (f/k/a PDPS LLC)*
***DENIED***

Bradley R. Aronstam, Esquire, S. Michael Sirkin, Esquire, Thomas C. Mandracchia, Esquire, Ross Aronstam & Moritz LLP, Wilmington, Delaware, Adam Slutsky, Goodwin Procter LLP, Boston, Massachusetts, James Nikraftar, Goodwin Procter LLP, Santa Monica, California. *Attorneys for Plaintiff ET Aggregator, LLC.*

Jesse L. Noa, Esquire, David A. Seal, Esquire, P. Andrew Smith, Esquire, Potter Anderson & Carroon LLP, Wilmington, Delaware. *Attorneys for Defendants PFJE AssetCo Holdings LLC and Pilot Solutions LLC (f/k/a PDPS LLC).*

**DAVIS, J.**

## I.   INTRODUCTION

This is a breach of contract action assigned to the Complex Commercial Litigation Division of the Court. Plaintiff ET Aggregator, LLC ("ETA") commenced this action against Defendants PFJE Assetco Holdings, LLC ( "PFJE") and Pilot Water Solutions LLC (the "Company" and collectively with PFJE, "Defendants"). As set out in the Complaint, ETA is seeking recovery for Defendants' alleged breach of contractual obligations under the parties' Membership Interest Purchase Agreement ("MIPA"). ETA alleged breaches include failures to:

"(i) negotiate at all with [ETA]; (ii) provide any draft 2021 tax returns at any point in time; (iii) direct communications to [ETA's majority owner]; and (iv) pay any Tax Distribution to cover the allocation to [ETA] of $5.5 million of depreciation recapture income."[1]  ETA seeks all its relief though one claim for breach of contract entitled Count I Breach of Contract ("Count I").[2]

On March 23, 2023, Defendants filed their Defendants' Partial Motion to Dismiss (the "Motion").[3]  Defendants request dismissal of that part of Count I that relates to the purported contractual agreement to pay a Tax Distribution to ETA to cover the allocation of $5.5 million of depreciation recapture income.  Defendants rely on governing agreements, arguing that these agreements preclude ETA's claim for Tax Distributions.  ETA opposed the Motion.[4]

The Court held a hearing on the Motion on August 23, 2023.[5]  At the conclusion of the Hearing, the Court took the Motion under advisement.  For the reasons set forth below, the Motion is **DENIED**.

## II.    RELEVANT FACTS

### A. PARTIES

ETA is a Delaware LLC and was a member of the Company.[6]  ETA was a party to the MIPA and the Company's Second Amended and Restated Limited Liability Company Agreement (the "LLC Agreement").[7]  ETA owned a 1.47% membership interest in the Company as of October 2021.[8]

---

[1] Compl. ¶ 35 (D.I. No. 1).
[2] Compl. ¶¶ 31-36.
[3] D.I. No. 5.
[4] D.I. No. 11.
[5] D.I. No. 19.
[6] Compl. ¶ 8.
[7] *Id.*
[8] *Id.*

PFJE is a Delaware LLC and was a member of the Company.[9] PFJE was party to the MIPA and LLC Agreement.[10] The Company is a Delaware LLC with its principal place of business in Texas.[11] The Company was a party to the MIPA for the sole purpose of Section 16, titled "Company Agreement."[12]

## B. THE DISPUTE

In 2018, the Company was created to own and operate infrastructure associated with the management and disposal of water resulting from the production of oil and gas.[13] On November 1, 2018, ETA and the Company (and others) executed the LLC Agreement.[14]

The LLC Agreement describes circumstances in which the Company is required to make Tax Distributions.[15] The terms of the LLC Agreement provide liquidity to its members to permit each member to pay its assumed tax liability based on its share of the taxable income generated by the operations of the company.[16] Pursuant to the LLC Agreement, ETA was the "NAH Member" of the Company.[17] Section 9.03 of the LLC Agreement gave the Company the ability, at its sole discretion, to exercise a call option to buy the Membership Interests of the NAH Member at a specific price determined by the LLC Agreement.[18] On February 7, 2019, the LLC Agreement was amended to change the method of calculating the Company's call option.[19]

---

[9] *Id.* ¶ 9.
[10] *Id.*
[11] *Id.* ¶ 10.
[12] *Id.*
[13] Defendants' Partial Motion to Dismiss ("Defendants' Mot.") at 3.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 3-4.
[17] *Id.* at 7.
[18] *Id.*
[19] *Id.*

PFJE exercised its call option as the 2021 deadline to exercise that option approached.[20] On September 16, 2021, PFJE sent ETA a first draft of the MIPA, with a closing date of October 15, 2021.[21] Following negotiations, ETA and PFJE agreed in principle to a $3,000,000 purchase price for ETA's Membership Interest on September 30, 2021.[22] ETA insisted on post-closing tax protection from the Company such as it would have received if it had remained a member of the Company.[23] In an email from ETA's counsel dated October 15, 2021, ETA requested that ETA "should not come out of pocket to pay taxes on any income allocated to it."[24] The Company agreed, and Section 16 was added to the MIPA to reflect ETA's request.[25] The parties closed on the MIPA on October 15, 2021.[26]

In July 2022, the Company filed its tax return, allocating $5,523,798 of taxable income generated from the sale of ETA's membership interest in the form of depreciation recapture to ETA.[27] On February 13, 2023, ETA brought the present action for breach of contract against Defendants asserting, in relevant part, that Defendants failed to "pay any Tax Distribution to cover the allocation to [ETA] of $5.5 million of depreciation recapture income."[28]

---

[20] Compl. ¶ 15-16.
[21] Defendants' Mot. at 8.
[22] Compl. ¶ 17.
[23] *Id.* ¶ 19.
[24] *Id.* ¶ 20.
[25] *Id.*
[26] Defendants' Mot. at 10.
[27] *Id.* at 11.
[28] Compl. ¶ 35.

4

## C. THE GOVERNING AGREEMENTS[29]

### 1. The LLC Agreement

On November 1, 2018 ETA and the Company executed the LLC Agreement.[30] In relevant part, under Section 6.01 of the LLC Agreement, the Company is required to make certain Distributions:

> (a) Any available cash of the Company, after allowance for payment of all Company obligations then due and payable, including debt service and operating expenses and for such reasonable reserves as the Management Committee, acting in accordance with Section 7.06(e), may determine, shall be distributed to the Members from time to time as determined by the Management Committee, pro rata in accordance with their respective Percentage Interests (subject to Section 6.01(b)).
>
> …
>
> (c) Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make any distribution to the Members if such distribution would violate § 18-607 of the Delaware Act or other Applicable Law or if such distribution is prohibited by the Company's then-applicable debt-financing agreements.[31]

Specifically, Section 6.02 of the LLC agreement requires the Company to make Tax Distributions under specific circumstances:

> (a) Subject to Section 6.01(a) and Section 6.01(c), at least ten (10) days before each date prescribed by the Code for a calendar-year corporation to pay quarterly installments of estimated tax, the Company shall, subject to any restriction on the Company's ability to do so arising under Applicable Law or contractual arrangement, distribute cash to each Member in proportion to and to the extent of

---

[29] As set out below, the Court is not addressing the merits of Defendants' Motion on the viability of ETA's Tax Distribution "sub-claim," However, ETA's argument with respect to Defendants' interpretation of the governing agreements creating ambiguity is not strong. "Although the parties disagree as to the proper interpretation of the contract, their disagreement does not create an ambiguity. 'Rather a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'" *Northwestern Nat. Ins. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996). Accordingly, the disagreements by ETA and Defendants over the proper interpretation of the governing agreements does not create an ambiguity. This opinion lays out the relevant provisions of the governing agreements for a reason. The Court has spent some time reviewing the MIPA and the LLC Agreement and the language of these agreements as they relate to taxable income, etc., seems plain and unambiguous. The parties may want to stipulate to facts and make legal arguments in dispositive motions at the proper time to resolve this subpart of Count I.

[30] Defendants' Mot. at 3.

[31] Compl., Ex. B (the "LLC Agreement") § 6.01.

such Member's Quarterly Estimated Tax Amount for the applicable calendar quarter (each such distribution, a "Tax Distribution").

(b) Subject to Section 6.01(a), if, at any time after the final Quarterly Estimated Tax Amount has been distributed pursuant to Section 6.02(a) with respect to any Fiscal Year, the aggregate Tax Distributions to any Member with respect to such Fiscal Year are less than such Member's Tax Amount for such Fiscal Year (a "Shortfall Amount"), the Company shall use commercially reasonable efforts to distribute cash in proportion to and to the extent of such Member's Shortfall Amount.

(c) Any distributions made pursuant to this Section 6.02 shall be (i) reduced by distributions previously made pursuant to Section 6.01(a) in the same Fiscal Year, and (ii) treated for purposes of this Agreement as advances of distributions pursuant to Section 6.01(a) and shall reduce, dollar-for-dollar, the amount otherwise distributable to such Member pursuant to Section 6.01(a).[32]

The LLC Agreement provides additional structure through its defined terms.

These include:

**"Adjusted Taxable Income"** of a Member for a Fiscal Year (or portion thereof) with respect to the Membership Interest held by such Member means the federal taxable income allocated by the Company to the Member with respect to its Membership Interest (as adjusted by any final determination in connection with any tax audit or other proceeding) for such Fiscal Year (or portion thereof); provided, however, that such taxable income shall be computed (a) assuming that any deduction described under Code Section 199A is unavailable to the Members, (b) without regard to any allocations pursuant to Code Section 704(c), and (c) taking into account any special basis adjustment with respect to such Member resulting from an election by the Company under Code Section 754.[33]

**"Estimated Tax Amount"** of a Member for a Fiscal Year means the Member's Tax Amount for such Fiscal Year as estimated in good faith from time to time by the Management Committee. In making such estimate, the Management Committee shall take into account amounts shown on Internal Revenue Service Form 1065 and all accompanying Member Schedule K-1s filed by the Company and similar state or local forms filed by the Company for the preceding taxable year and such other adjustments as the Partnership Representative reasonably determines are necessary or appropriate to reflect the estimated operations of the Company for the Fiscal Year.[34]

**"Membership Interest"** means an interest in the Company owned by a Member, including such Member's right (a) to its share of Net Income, Net Losses and other

---

[32] *Id.* § 6.02.
[33] *Id.* § 1.01.
[34] *Id.*

6

items of income, gain, loss and deduction of the Company; (b) to its distributive share of the assets of the Company; (c) to vote on, consent to, or otherwise participate in any decision of the Members as provided in this Agreement; and (d) to any and all other benefits to which such Member may be entitled as provided in this Agreement or the Delaware Act. The Membership Interest of each Member shall be expressed as a Percentage Interest.[35]

**"Quarterly Estimated Tax Amount"** of a Member for any calendar quarter of a Fiscal Year means the excess, if any, of (a) the product of (i) a quarter (1⁄4) in the case of the first calendar quarter of the Fiscal Year, half (1⁄2) in the case of the second calendar quarter of the Fiscal Year, three-quarters (3⁄4) in the case of the third calendar quarter of the Fiscal Year, and one (1) in the case of the fourth calendar quarter of the Fiscal Year and (ii) the Member's Estimated Tax Amount for such Fiscal Year, over (b) all distributions previously made during such Fiscal Year to such Member.[36]

**"Tax Amount"** of a Member for a Fiscal Year means the product of (a) the Tax Rate for such Fiscal Year and (b) the Adjusted Taxable Income of the Member for such Fiscal Year with respect to its Membership Interest.[37]

## 2. The MIPA

On October 15, 2021, ETA and the Company closed on the MIPA.[38]  MIPA Section 16 addresses tax consequences of the transaction and provides:

Company Agreements. The Company consents to and approves in all respects (whether required under the LLCA or otherwise) to the purchase and sale of the Interests pursuant to this Agreement and the consummation of the transactions contemplated by the Transaction Documents. The Parties intend that, for federal income tax purposes, the purchase and sale described in Section 1 be treated as (i) from Seller's perspective, the sale of a partnership interest pursuant to Section 741 of the Internal Revenue Code of 1986 (the "Code") and (ii) from Buyer's perspective, a liquidating distribution by the Company of an undivided interest in the Company's assets to Buyer and Seller pursuant to Section 731 of the Code, immediately followed by Buyer's taxable acquisition of the assets deemed to be distributed to Seller, in each case, in a manner consistent with Revenue Ruling 99-6 (Situation 1). The Closing shall cause the termination of the Company as a partnership for federal and state income tax purposes. Following the Closing, the Parties shall negotiate in good faith to allocate the Purchase Price (and any other items required to be treated as consideration for federal income tax purposes, including amounts described in the penultimate sentence of this Section 16) among

---

[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] Defendants' Mot. at 10.

7

the assets deemed to be acquired by Buyer in a manner consistent with Section 1060 of the Code and the Treasury Regulations promulgated thereunder and, if the Parties reach an agreement on such allocation, each Party shall prepare and file all relevant tax returns in a manner consistent with such allocation. As soon as reasonably practicable after the Closing, the Company will deliver or cause to be delivered to Seller, IRS Schedule K-1 to Form 1065 and such other information with respect to the Company as may be necessary for the preparation of Seller's federal, state and local income tax returns for 2021. The federal and state and other income tax returns of the Company and related Schedule K-1s for its final year ending as of the Closing shall be prepared in accordance with and consistent with the past practice of the Company. Complete drafts of such income tax returns shall be provided by the Company to Seller at least twenty (20) business days in advance of the due date and intended filing date for review and comment, and the Company shall reasonably consider all such comments in good faith. Notwithstanding the Closing and Seller ceasing to be a Member (as defined in the LLCA) of the Company as of the Closing, the Company shall timely pay to Seller all Tax Distributions and Shortfall Amounts, each as defined in Section 6.02 of the LLCA, to which Seller otherwise would be entitled under such Section 6.02 of the LLCA with respect to income allocated to Seller during the period during which it was a Member. Such payments shall not reduce any amounts to which Seller is otherwise entitled under this Agreement.[39]

### 3.    PROCEDURAL POSTURE

On February 13, 2023, ETA filed the present action for breach of contract against Defendants.[40]  As stated above, ETA is seeking recovery for Defendants' alleged breach of contractual obligations under the MIPA, including the failure of Defendants to pay any Tax Distribution to cover the allocation to [ETA] of $5.5 million of depreciation recapture income."[41]

On March 23, 2023, Defendants filed the Motion asserting that the Court should dismiss ETA's claim that the Company breached its contractual agreements by failing to pay any Tax Distribution.[42]  On April 28, 2023, ETA filed its Answering Brief in Opposition to Defendants'

---

[39] Compl., Ex. A. (hereinafter, "The MIPA") Section 16.
[40] D.I. No. 1.
[41] *Id.* ¶ 35
[42] *See* Defendants' Mot.

Partial Motion to Dismiss.[43] On May 23, 2023, Defendants filed their Reply Brief in support of their Partial Motion to Dismiss.[44] The Court held a hearing on August 23, 2023.

### III.    PARTIES' CONTENTIONS

#### A. THE MOTION

Defendants request that the Court dismiss part of Count I—ETA's breach of contract claim relating to contractual obligations under the governing agreements with respect to the Tax Distribution.[45] Defendants contend that dismissal is warranted because ETA has misconstrued the language of the MIPA and LLC Agreement and invented a benefit that was not contemplated in the agreements.[46]

Defendants maintain that the "plain and unambiguous language of the LLC Agreement" contradicts ETA's claim in Count I that ETA is entitled to receive a Tax Distribution for taxable income arising from the sale of ETA's membership interest.[47] Defendants argue that taxable income recognized upon the sale of the membership interest is not the type of income that is to be reimbursed under the LLC Agreement.[48] Defendants assert the Tax Distribution claim set out in Count I fails to state a claim for breach of contract for failure to make a Tax Distribution.[49]

#### B. THE OPPOSITION

ETA argues that the Motion should be denied because it is defective on two grounds, one procedural and one substantive.[50] First, ETA contends that the Motion is procedurally defective

---

[43] *See* Plaintiff's Answering Brief in Opposition to Defendants' Partial Motion to Dismiss (hereinafter, "Plaintiff's Opp.") (D.I. No. 11).
[44] *See* Defendants' Reply Brief in Support of its Partial Motion to Dismiss (hereinafter, "Defendants' Rep.") (D.I. No. 14).
[45] Defendants' Mot. at 2.
[46] *Id*. at 1.
[47] *Id*. at 2.
[48] *Id.*
[49] *Id.*
[50] Plaintiff's Opp. at 2.

9

because Civil Rule 12(b)(6) does not permit partial dismissal of a cause of action.[51]  ETA asserts that under Delaware caselaw, Rule 12(b)(6) does not allow for "piecemeal dismissals of parts of claims."[52]

Second, ETA charges that its claim for breach of contract "satisfies Delaware's 'minimal' pleading standards."[53]  ETA notes that the MIPA unambiguously does not limit Tax Distributions to "income generated by the everyday operations."[54]  ETA argues that the Company misreads the MIPA by failing to give full effect to the parties' intentions.[55]  Thus, ETA claims that, even if not procedurally flawed, the Motion is substantively deficient in that Defendants are creating a limitation that does not exist in the MIPA.[56]  Alternatively, ETA asserts that the Company's competing interpretation of the MIPA, at the very least, raises an ambiguity not appropriate for resolution at the pleading stage of the proceeding.[57]  As such, ETA takes the position that Count I does not fail to state a claim for a breach of the Company's contractual obligation to pay a Tax Distribution for the $5.5 million depreciation recapture income that was allocated to ETA upon the sale of its interest.[58]

## IV.    STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably

---

[51] *Id.*
[52] *Id.*
[53] *Id*. at 11.
[54] *Id*. at 12.
[55] *Id*. at 13.
[56] *Id*. at 2.
[57] *Id*. at 17.
[58] *Id*. at 1.

10

conceivable set of circumstances.[59] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[60]

In considering a motion to dismiss under Rule 12(b)(6), the court generally may not consider matters outside the complaint.[61] However, documents that are integral to or incorporated by reference in the complaint may be considered.[62] "If . . . matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[63]

## V. DISCUSSION

Under Civil Rule 12(b)(6) and Delaware law, "a defendant must seek dismissal of an entire claim for its motion to be deemed procedurally valid."[64] However, Delaware courts will "allow 12(b)(6) motions for partial dismissal so long as they do not seek to just trim down theories within a single claim."[65] "Put simply, the Court must consider a claim or counterclaim its entirety when ruling on a Rule 12(b)(6) motion to dismiss."[66] "[A]t the pleading stage of a case, a trial judge is not a robed gardener employing Rule 12(b)(6) as a judicial shear to prune individual theories from an otherwise healthily pled claim or counterclaim."[67]

---

[59] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, No. 09C-09-136, 2010 WL 5825353, at *3 (Del. Super. Oct. 27, 2010).
[60] *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).
[61] Super. Ct. Civ. R. 12(b).
[62] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995).
[63] Super. Ct. Civ. R. 12(b).
[64] *Blue Cube Spinco LLC v. Dow Chemical Company,* 2021 WL 4453460, at *12 (Del. Super. Sept. 29, 2021) (citing *inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc*., 2021 WL 252823, at *6 (Del. Super. Jan. 26, 2021)).
[65] *Unbound Partners Limited Partnership v. Invoy Holdings Inc*., 251 A.3d 1016, 1028 (Del. Super. Mar. 17, 2021) (citing *inVentiv*, 2021 WL 252823, at *6).
[66] *inVentiv*, 2021 WL 252823, at *6 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322-23 (2007)).
[67] *Id.* at *4.

ETA argues that the Motion is procedurally defective as "it does not seek dismissal of the entire claim for breach of contract."[68] Specifically, ETA asserts that the Company does not seek to dismiss the parts of the claim arising from its failure to: (i) negotiate in good faith to allocate the purchase price of the assets; (ii) send ETA complete drafts of its 2021 income tax return at least twenty days before the filing deadline and consider ETA's comments in good faith; and (iii) consult with ETA's majority owner, David Florance.[69] ETA relies on the Delaware caselaw cited above which purportedly establishes that granting the Motion would constitute an impermissible piecemeal dismissal of part of Count I.

In response, Defendants argue that ETA's "artful pleading tactic" is an "attempt to smuggle in a claim that would not otherwise survive a motion to dismiss."[70] Specifically, Defendants assert that "[t]he payment of Tax Distributions is a distinct obligation of the MIPA that Defendants are alleged to have violated, separate from [ETA's] other three 'theories' in the Complaint's 'single' count."[71] As such, Defendants maintain that the Tax Distribution theory should have been pled as a separate and distinct breach of contract claim.[72]

Defendants support their position by making a public policy argument that allowing ETA's pleading tactics to stand in this matter could "incentivize mischief."[73] Defendants rely upon various decisions where the Court of Chancery has dismissed parts or theories of a claim under the identical Chancery Rule 12(b)(6). Defendants also rely on *Intermec IP Corp. v. TransCore, LP*, where the Court stated:

> [T]he Court cautions claimants who include multiple "sub-theories" within one count, instead of pleading them as separate counts. Not only are sub-theories easy

---

[68] Plaintiff's Opp. at 11.
[69] *Id.*
[70] Defendants' Rep. at 3.
[71] *Id.* at 5.
[72] *Id.*
[73] *Id.*

to miss, but also this Court has held that motions to dismiss (or to trim) parts of claims are invalid. *See inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at \*4–6 (Del. Super. Ct. Jan. 26, 2021). By logical extension, the same could be said, in the appropriate case, for pleading those "parts" in the first place. If a defendant must attack whole counts, a defendant should have whole counts to attack. Otherwise, a plaintiff could be insulated from dismissal by embedding weak theories into strong ones and then claiming they all fall or none fall.[74]

In *inVentiv*, the Court denied a motion to dismiss which sought the dismissal "of but a few of [defendant's] theories of recovery supporting its breach-of-contract counterclaim."[75] Plaintiff filed a complaint for breach of contract, equitable estoppel, promissory estoppel, and unjust enrichment.[76] Defendant filed counterclaims against plaintiff for (i) breach of the implied covenant of good faith and fair dealing and (ii) fraud in the inducement.[77] In one counterclaim, defendant asserted that plaintiff breached the relevant agreements through overbillings, missed contractual milestones, continued billings after suspending services, and unreturned grant funds.[78] Plaintiff filed a motion to dismiss which addressed, in relevant part, only a few of the theories of that counterclaim.[79] In the motion, plaintiff readily admitted the implausibility of dismissing the entire breach-of contract counterclaim.[80]

In denying the motion, the Court held that it "…must consider a claim or counterclaim its entirety when ruling on a Rule 12(b)(6) motion to dismiss."[81] Quoting the Seventh Circuit, the Court reasoned that "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal

---

[74] *Intermec IP Corp. v. Transcore, LP,* 2021 WL 3620435, at \*24 (Del. Super. Aug. 16, 2021).
[75] *inVentiv*, 2021 WL 252823, at \*4.
[76] *Id*. at \*2.
[77] *Id.*
[78] *Id.*
[79] *Id.* at \*5.
[80] *Id.*
[81] *Id.* at \*6.

13

dismissals of parts of claims; the question at this stage is simply whether the complaint includes all factual allegations that state a plausible claim for relief."[82]

The Court agrees with the reasoning set out in *inVentiv*—Civil Rule 12(b)(6) does not permit piecemeal dismissals of parts of a claim. In the instant case, Defendants seek partial dismissal of Count I (the only Count) of the Complaint. Count I alleges Defendants' breach of contractual obligations under the MIPA, including failures to "(i) negotiate at all with [ETA]; (ii) provide any draft 2021 tax returns at any point in time; (iii) direct communications to Mr. Florance; and (iv) pay any Tax Distribution to cover the allocation to [ETA] of $5.5 million of depreciation recapture income."[83]

Count I is similar to the counterclaim at issue in *inVentiv*, which alleged various "theories" for plaintiff's breach of contract.[84] Like *inVentiv*, Defendants here are seeking the dismissal of only one of the theories of Count I. Furthermore, Defendants fail to point to "a single Delaware state court that allowed partial dismissal by plucking out individual allegations from a single claim on a Rule 12(b)(6) motion."[85] The Court finds that the present case is on point with *inVentiv*.

It should be noted that Defendants appear correct that ETA's tactful pleading is exactly the type of conduct warned of in *Intermec*. However, Defendants' public policy arguments as to why this Court should contradict legal precedent are not persuasive. The Court is cognizant of the problem of "artful" pleading. The Court is also aware of the liberal use of Rule 12(b) motion practice. If the Court allows parties to seek piecemeal dismissals this could create a situation

---

[82] *Id.*
[83] Compl. ¶ 35.
[84] *inVentiv*, 2021 WL 252823, at *2.
[85] *Id.* at *4.

where parties prematurely test legal issues and parts of claims best dealt with after the filing of an answer and some discovery. For these reasons, the Motion is **DENIED**.

## VI. CONCLUSION

Now, therefore, it is ordered that the Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

December 8, 2023
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress